USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___9/12/2024___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ASHANTE CHARLES, individually and on behalf of
all others similarly situated,

                          Plaintiffs,

            -against-

UNITED STATES OF ARITZIA INC.,

                          Defendant.

---

23-CV-09389 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff Ashante Charles ("Plaintiff" or "Charles") initiated the above-captioned action to recover damages for allegedly delinquent wage payments made to her and similarly situated employees of Defendant United States of Aritzia Inc. ("Defendant" or "Aritzia") who qualify as manual workers pursuant to New York Labor Law ("NYLL") Article 6 §§ 190 *et seq.*  Dkt. No. 4 at ¶ 1.[1]  Specifically, Plaintiff alleges that Defendant violated NYLL Article 6 § 191 by paying her, and others similarly situated, bi-weekly, rather than weekly, without authorization from the New York State Department of Labor Commissioner.  *Id.* at ¶¶ 2–3.

Before the Court is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f).  *See* Dkt. No. 15.  Plaintiff has submitted three notices of supplemental authority and Defendant has submitted one notice of supplemental authority, all of which the Court has considered.  *See* Dkt. Nos. 22, 23, 24, 25.  For the reasons set forth below, Defendant's motion to dismiss is DENIED.

---

[1] Plaintiff filed her Complaint on October 25, 2023.  *See* Dkt. No. 1.  On October 27, 2023, Plaintiff filed her First Amended Complaint ("FAC").  *See* Dkt. No. 4.  The FAC is the operative complaint in this action.  Although the caption on the electronic docket in this case refers to the Defendant as United States of "Artizia," the Court herein uses the parties' correct spelling of "Aritzia."

**FACTS AND PROCEDURAL HISTORY**

Defendant Aritzia is a Delaware corporation with its principal place of business in Vancouver, Canada, that owns and operates multiple retail establishments, and employs "in excess of hundreds of employees." Dkt. No. 4 at ¶¶ 4, 13, 16. Plaintiff Charles alleges that between September 2019 and March 2020 she was a non-exempt, hourly employee at several Aritzia locations, two of which are located in Manhattan. *Id.* at ¶ 7. According to Plaintiff, more than 25% of her job duties comprised physical tasks, such as "stocking shelves, moving inventory, receiving, unpacking, organizing, storing, packaging, and labeling merchandise, and generally remaining on her feet for the entirety of her shift." *Id.* at ¶ 8.[2]

It is undisputed that Defendant paid Plaintiff on a bi-weekly schedule, instead of a weekly schedule, without authorization from the New York State Department of Labor Commissioner. *Id.* at ¶ 3; *see also* Dkt. No. 16 at 1. Plaintiff alleges that the bi-weekly payments prevented her and her putative class members from "spending money earned on a bevy of everyday expenses and to provide for their basic needs, including but not limited to, purchasing food and groceries, making rent or mortgage payments, settling bills for utilities, medical supplies and services, insurance, automobile payments, and other basic living expenses." Dkt. No. 4 at ¶ 11. The delayed payments caused her to "los[e] the time value of that money" because she "could not save, invest, earn interest on, or otherwise use these monies that were rightfully hers." *Id.* at ¶¶ 9.

---

[2] Throughout her FAC, Plaintiff refers to herself and those in her putative class as "manual laborers." *See generally*, Dkt. No. 4. Because New York Labor Law Section 191 refers to "manual workers," and Plaintiff's only claim arises under Section 191, the Court will construe Plaintiff's references to manual laborers as manual workers.

**DISCUSSION**

Defendant moves to dismiss Plaintiff's FAC and strike the class allegations therein under Rules 12(b)(1), 12(b)(6), and 12(f) of the Federal Rules of Civil Procedure.  *See generally* Dkt. No. 15.  Defendant argues that (1) Plaintiff does not have standing because she has not established that she suffered an injury in fact or that such injury would be addressed by judicial relief; (2) there is no private right of action for untimely wage payment under Sections 191 and 198(1-a) of the NYLL; and (3) in the event the Court denies Defendant's motion to dismiss, the class allegations in Plaintiff's FAC must be stricken because Plaintiff's putative class is an "impermissible fail-safe class."  Dkt. No. 16 at 1–3.  Each argument will be discussed in turn.

## I.      Plaintiff Has Article III Standing

To satisfy the Article III injury-in-fact requirement, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Environ. Serv.'s*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Certain harms "readily qualify as concrete injuries under Article III," including "traditional tangible harms, such as physical harms and monetary harms."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).  The Supreme Court has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.  Article III standing requires a concrete injury even in the context of a statutory violation."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *see also TransUnion*, 594 U.S. at 426.

3

Defendant asserts that Plaintiff fails the Article III standing test in two related ways: first, that Plaintiff "has not alleged sufficient facts to plausibly suggest that she suffered any injury in fact beyond this purported injury in law," Dkt. No. 16 at 15; and, second, that because Plaintiff was paid in full and does not seek unpaid or underpaid wages, "she has no injury that could be remedied in this suit." *Id.* at 15–16. Both arguments fail.

Plaintiff's stated injury is that Defendant's bi-weekly payment structure violated her right, under Section 191, to receive payment weekly and deprived her of the time value of money which she was owed. Dkt. No. 4 at ¶¶ 9–12. This is an injury that courts throughout the Second Circuit have recognized as sufficient to establish standing. *See, e.g.*, *Zachary v. BG Retail, LLC*, 22-cv-10521 (VB), 2024 WL 554174, at *3 (S.D.N.Y. Feb. 12, 2024) ("Courts in this Circuit have commonly held that the temporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing." (internal references omitted)); *Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 63–64 (S.D.N.Y. 2023) (collecting cases); *Levy v. Endeavor Air Inc.*, 638 F. Supp. 3d 324, 330 (E.D.N.Y. 2022) ("Plaintiffs' claim that Endeavor's deprivation of the time value of their wages was in violation of New York statutory law is enough to establish Article III standing."). Even though Plaintiff does not dispute that she received the full amount of wages she was owed, the "delay of payment, in and of itself, constitutes a concrete harm that suffices for purposes of Article III." *Gillett v. Zara USA, Inc.*, 20-cv-03734 (KPF), 2022 WL 3285275, at *6 (S.D.N.Y. Aug. 10, 2022).

Defendant's second argument combines injury-in-fact with redressability, claiming that Plaintiff has "no injury that could be remedied in this suit." Dkt. No. 16 at 16. According to Defendant, Plaintiff "seeks to recover a penalty in the form of liquidated damages," but because she is not "due" any wages, her liquidated damages award would be $0. *Id.* The amount of

liquidated damages, if any, is not properly considered at the motion to dismiss stage.  *See*

*Bazinett v. Pregis LLC*, 23-cv-00790 (MAD/ML), 2024 WL 1116287, at *5 n.2 (N.D.N.Y. Mar.

14, 2024) (collecting cases); *see also Day v. Tractor Supply Co.*, 22-cv-00489 (JLS) (MJR), 2023

WL 2560907, at *1 (W.D.N.Y. Mar. 17, 2023) (finding that, in the context of a Section 191

claim, the court would "address liquidated damages issues, calculations, and counterarguments . .

.—on the facts of this case and in light of actual, albeit late, payment of wages—at summary

judgment or at trial").

 Defendant's motion to dismiss for lack of standing is denied.

## II. The First Amended Complaint States a Claim

### a. Legal Standard on a Motion to Dismiss

 In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a complaint must plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim only has "facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in

a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp.*, 550

U.S. at 558.  The standard for surviving a motion to dismiss is not difficult to meet.  *See Walker*

*v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (the issue on a motion to dismiss is whether a plaintiff

is entitled to offer evidence to support its claims, not whether the plaintiff will ultimately

prevail).

 When ruling on a Rule 12(b)(6) motion, the district court must accept all factual

allegations contained in the complaint as true and draw all reasonable inferences in favor of the

plaintiff.  *See, e.g.*, *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, courts are not required to accept as true legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

>    **b.  Section 191 of New York Labor Law**

Here, the Defendant's motion to dismiss under Rule 12(b)(6) turns entirely on a legal question:  whether Section 191 and Section 198(1-a) of the New York Labor Law confer an express or implied private right of action for employees to sue their employer for pay frequency violations.  Section 191 of the New York Labor Law provides that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned."  Section 198(1-a), the enforcement provision of Section 191, permits an employee who is "paid less than the wage to which . . . she is entitled" to bring a "wage claim" "to recover the full amount of any underpayment," in addition to "reasonable attorney's fees, prejudgment interest . . . and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages[.]"

Defendant argues that Plaintiff's claim must be dismissed because neither Section 191 nor Section 198(1-a) confer an express or implied private right of action upon employees, like Plaintiff, to sue their employers for pay frequency violations.  Dkt. No. 16 at 1.  Plaintiff, on the other hand, argues that Sections 191 and 198(1-a) contain both an express and implied private right of action.  Dkt. No. 18 at 7–9.  Which of these positions is correct is a question of New York state law.  Federal courts applying state law "are generally obliged to follow the state law decisions of state intermediate appellate courts."  *Broder v. Cablevisions Sys. Corp.*, 418 F.3d 187, 199–200 (2d Cir. 2005) (quoting *Pentech Int'l, Inc. v. Wall St. Clearing Co.*, 983 F.2d 441,

445 (2d Cir. 1993).  "Where state law is unsettled, we are obligated to carefully . . . predict how the state's highest court would resolve the uncertainty or ambiguity."  *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) (internal references omitted); *see also Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000) ("Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law.  In determining how the Court of Appeals would rule on this legal question, the decisions of New York State's Appellate Division are helpful indicators." (internal references omitted)).  Each party cites an intermediate appellate decision in their favor:  Plaintiff from the First Department of the New York Appellate Division, and Defendant a later conflicting case from the Second Department.

In *Vega v. CM & Associates Construction Management, LLC*, the First Department held that Section 191 and 198(1-a) confer both an express and implied private right for employees to sue their employer for pay frequency violations.  107 N.Y.S.3d 286, 288–89 (1st Dep't 2019).  According to *Vega*, "the term underpayment [within Section 198(1-a)] encompasses the instances where an employer violates the frequency requirements of section 191(1)(a) but pays all wages due before the commencement of an action," thus permitting express private rights of action for violations of Section 191.  *Id.* at 288.  The *Vega* court continued that even if there were no express right of action, one could be implied because doing so would be consistent with the legislative scheme, promotes the legislative purpose of "protect[ing] workers who are generally dependent upon their wages for sustenance," and the plaintiff in *Vega* was a member of the class—manual workers—for whose benefit the statute was enacted.  *Id.* at 289 (internal references omitted).

Nearly five years after *Vega*, the Second Department reached the opposite conclusion in *Grant v. Global Aircraft Dispatch, Inc.*, holding that Sections 191 and 198(1-a) do not confer an express or implied private right of action for employees to sue for pay frequency violations. 204 N.Y.S.3d 117, 125 (2d Dep't 2024). *Grant* determined that Sections 191 and 198(1-a) do not expressly contain a private right of action because Section 191 "is addressed to nonpayment and underpayment of wages, as distinct from the frequency of payment," and determined that "payment of full wages on the regular biweekly payday [does not] constitute[] nonpayment or underpayment" within the meaning of Section 191. *Id.* at 122. The *Grant* court further held that there is no implied private right of action for pay frequency violations because there are "multiple official enforcement mechanisms for violations of Labor Law § 191" and an implied right would therefore be inconsistent with the legislative scheme of Section 191. *Id.* at 125 (citing *Konkur v. Utica Acad. of Sci. Charter Sch.*, 38 N.Y.3d 38, 43 (2022)).

*Vega* and *Grant* have created a split in authority within New York's intermediate appellate courts with respect to whether Section 191 and Section 198 confer an express or implied private right of action. The New York Court of Appeals has not yet addressed the issue. Thus, the Court must attempt to predict "how the Court of Appeals would rule[.]" *Michalski*, 225 F.3d at 116.

### c. Sections 191 and 198(1-a) Contain a Private Right of Action

After considering *Vega* and *Grant*, in addition to the cases applying each decision, this Court finds the reasoning of *Vega* more persuasive than that of *Grant*, and predicts that the New York Court of Appeals is more likely to adopt *Vega*. This is the same conclusion reached by the majority of district courts in our Circuit that have confronted the split in authority in the months since *Grant* was decided. *See, e.g.*, *Covington v. Childtime Childcare, Inc. et al.*, 23-cv-00710 (BKS/MJK), 2024 WL 2923702, at *4 (N.D.N.Y. June 10, 2024) ("District courts sitting in this

Circuit have had the opportunity to weigh-in on *Grant* and address the split in authority—all but one have continued to follow *Vega* as the predominate authority and predict that the Court of Appeals is more likely to adopt the First Department's conclusion." (collecting cases)); *Bazinett*, 2024 WL 1116287, at *9 ("The Court predicts that based on the current legal landscape, the New York Court of Appeals would accept *Vega*."); *Zachary*, 2024 WL 554174, at *7 (holding "the reasoning in *Vega* and the dissent in *Grant* persuade the Court that the Court of Appeals would likely agree with *Vega* and reject *Grant*").  *But see Galante v. Watermark Servs. IV, LLC*, 23-cv-6227-FPG, 2024 WL 989704 (W.D.N.Y. Mar. 7, 2024) (determining the New York Court of Appeals would follow *Grant* instead of *Vega*); *Espinal v. Sephora USA, Inc.*, 22 Civ. 03034 (PAE) (GWG), 2024 WL 3589604 at *8 (S.D.N.Y. July 31, 2024) (report and recommendation "predict[ing] that the New York Court of Appeals would follow the Second Department's decision in *Grant*").

### i.  Express Private Right of Action

As to an express private right of action, Section 198(1-a) contains an express right of action for "wage claim[s]," including "underpayment[s]," that occur in violation of Article 6, and expressly permits these actions to be brought "*by an employee*[.]"  NYLL § 198(1-a) (emphasis added).  The Court agrees with *Vega* that the term "underpayment" in this statute includes late or delayed payments, such as a pay frequency violation.  Indeed, "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required."  *Vega*, 107 N.Y.S.3d at 288.  The fact that Section 198(1-a) does not expressly use the words "late payments" is immaterial to the issue of whether it expressly authorizes a private right of action for pay frequency claims.  *See Levy v. Endeavor Air Inc.*, 21-cv-04387 (ENV) (JRC), 2024 WL 1422322, at *2 (E.D.N.Y. Mar. 29, 2024) ("[F]ederal district courts have rejected the

*Grant* holding that the absence of explicit reference to 'late payments' in § 198—the enforcement mechanism of article 6 of NYLL—means that that section contains no express right of action for § 191 violations, reasoning instead that late payments *are* underpayments, and therefore § 198's language encompasses § 191 violations." (emphasis in original)); *see also Zachary*, 2024 WL 554174, at *7.

Thus, if a manual worker is not paid on the date required by Section 191(1)(a), he or she is underpaid and expressly authorized under Section 198 to bring a "wage claim[]" for the "underpayment" that occurred in violation of Section 191, even if the full earned wages are eventually paid. *See e.g.*, *Levy*, 2024 WL 1422322, at *2; *Zachary*, 2024 WL 554174, at *7–8; *Bazinett*, 2024 WL 1116287, at *9. Accordingly, the Court finds that Sections 191 and 198(1-a) contain an express private right of action permitting employees to sue employers for pay frequency violations. Defendant's motion to dismiss on this basis is denied.

### ii. Implied Private Right of Action

Moreover, even if there was not an express private right of action, the Court adopts the reasoning of *Vega* and *Zachary* that a private right of action for untimely wage payments can be implied from Sections 191 and 198(1-a). Under New York law, three elements must be satisfied to find that there is an implied private right of action in a particular statute: "'(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme[.]'" *Ortiz v. Ciox Health LLC*, 37 N.Y.3d 353, 360 (2021) (quoting *Sheehy v. Big Flats Cmty. Day*, 73 N.Y.2d 629, 633 (1989)).

The *Vega* court analyzed all three factors in reaching its conclusion that a private right of action could be inferred from Section 191. *Vega* reasoned that the

> plaintiff is a 'manual worker' as defined by the statute, and allowing her to bring suit would promote the legislative purpose of § 191, which is to protect workers who are generally dependent upon their wages for sustenance[,] and § 198, which was enacted to deter abuses and violations of the labor laws. It would also be consistent with the legislative scheme, as section 198 explicitly provides that individuals may bring suit against an employer for violations of the labor laws, even if the Commissioner chooses not to do so.

107 N.Y.S.3d at 289 (quotations and citations omitted).

*Grant*, on the other hand, held that Sections 191 and 198 did not confer an implied right of action allowing employees to sue for pay frequency violations. 204 N.Y.S.3d at 125. The *Grant* court did not dispute the first two elements of the implied right test, but only analyzed the third element in reaching this conclusion. *See id.*; *see also Zachary*, 2024 WL 554174, at *8 (noting that "[t]he *Grant* majority did not dispute that the first and second factor were satisfied when an employee is paid twice monthly in violation of Section 191"). *Grant* drew support from the New York Court of Appeals decision in *Konkur v. Utica Academy of Science Charter School* in concluding that a private right of action would be inconsistent with the legislative scheme of Section 198(1-a). *Grant*, 204 N.Y.S.3d at 125 (citing *Konkur*, 38 N.Y.3d at 43). *Konkur* held that the New York Labor Law's anti-kickback statute, which is wholly separate from the pay frequency statute at issue in this case (and *Vega* and *Grant*), did not contain an implied private right of action. 38 N.Y.3d at 44–45. Importantly, *Konkur* distinguished the anti-kickback provision from "the substantive provisions of Labor Law article 6[,]" and Section 191 in particular, which "generally regulates payment of wages by employers and creates reciprocal rights of employees." *Id.* at 44 (citations omitted); *see also Zachary*, 2024 WL 554174, at *7.

Along with many other courts that have considered *Konkur* in the context of a Section 191 claim, the Court finds that *Konkur* does not undermine the holding of *Vega*. *See, e.g.*, *Rankine*, 674 F. Supp. 3d at 67 ("This Court joins the many others in this Circuit that have found *Konkur* insufficient to support a conclusion that the Court of Appeals will overturn *Vega*."); *Zachary*, 2024 WL 554174, at *8 (determining that *Konkur* does not impact the holding of *Vega*); *Bazinett*, 2024 WL 1116287, at *9 ("[E]ven in light of *Konkur*, and the dissent in *Grant*, the Court concludes that the *Grant* majority and the few district court cases questioning *Vega* are not persuasive enough evidence to reject the present coalition of cases upholding *Vega*."); *c.f.* *Espinal*, 2024 WL 3589604, at *9–10 (report and recommendation applying the reasoning in *Grant* due, in part, to the New York Court of Appeals decision in *Konkur*; objections have been filed and the district court's decision is pending). Thus, "*Grant*'s reliance on *Konkur* . . . does not undermine the foundation on which federal courts in this Circuit have concluded that the view on New York law held in *Vega* is the view most likely to be adopted by the New York Court of Appeals should it confront the issue." *Levy*, 2024 WL 1422322, at *2 n.7 (citations omitted).

The clear weight of authority among district courts in the Second Circuit is aligned with the conclusion in *Vega* that there is an implied private right of action to enforce Section 191. The Court agrees that *Vega*'s analysis of the three *Sheehy* factors is persuasive. Accordingly, Defendant's motion to dismiss on this basis is denied as well.

### III.    Defendant's Motion to Strike Class Allegations is Premature

Finally, Defendant argues that Plaintiff's class allegations should be stricken from her FAC pursuant to Federal Rule of Civil Procedure 12(f) because her putative class is an "impermissible fail-safe class." Dkt. No. 16 at 17.

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike pursuant to Rule 12(f) are generally disfavored because they seek "to preemptively terminate the class aspects of . . . litigation solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Chenensky v. New York Life Ins. Co.*, 07-cv-11504 (WHP), 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011) (citation omitted).

A "fail-safe" class is a class "whose definition shields the putative class members from receiving an adverse judgment" because "the class itself is defined in a way that precludes membership unless the liability of the defendant is established." *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012) (references omitted).  Courts faced with a putative fail-safe class have "broad discretion to modify the class definition as appropriate." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 463–64 (S.D.N.Y. Feb. 28, 2018) (citation omitted).

Here, Defendant claims that Plaintiff's putative class is an "impermissible fail-safe class" and Plaintiff's class allegations should be stricken.  Dkt. No. 16 at 17; Dkt. No. 21 at 6–7.  According to Defendant, the question of whether Defendant's employees performed physical tasks for more than 25% of their workdays "requires a fact-intensive inquiry into the actual duties performed by the specific employee, which goes to the very issue of liability."  Dkt. No. 16 at 17–18.  Plaintiff argues that the Court should not strike her class allegations at this stage because Defendant's motion to strike is "premature and will remain so until the parties reach the class certification phase."  Dkt. No. 18 at 9.

The court in *Zachary v. BG Retail, LLC* considered a nearly identical motion to strike pursuant to Rule 12(f) that Defendant advances in the instant motion.  2024 WL 554174, at *9.  The *Zachary* Court was unpersuaded, explaining:

> Defendant is incorrect.  Its liability for purposes of the Section 191 Claim turns on whether defendant timely paid its manual workers.  Conversely, whether a particular employee is a manual worker because physical tasks comprise at least twenty-five percent of their duties bears on whether the putative class satisfies the commonality and predominance requirements of Rule 23.  Fed. R. Civ. P. 23(a)(2), (b)(3).  Therefore, the motion to strike is procedurally premature because it is based on grounds that are not "separate and apart from the issues that will be decided on a class certification motion."  *See Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d at 117.  Moreover, at this time, defendant has not demonstrated "it would be impossible to certify the alleged class regardless of the facts Plaintiffs may be able to obtain during discovery."  *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015).

*Id.*

The same is true here.  The issues presented in Defendant's motion to strike pursuant to Rule 12(f), including whether the Rule 23 requirements are met, are more properly considered at the class certification stage, at which time the Court will have "a more complete factual record from which to make its determination."  *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 53 (E.D.N.Y. 2017).  Defendant's motion to strike Plaintiff's class allegations pursuant to Rule 12(f) is denied.

**CONCLUSION**

For the reasons explained above, Defendant United States of Aritzia's motion to dismiss is

DENIED.  The Clerk of Court is directed to terminate Dkt. No. 15.


Dated: September 12, 2024
       New York, New York


                                        SO ORDERED.


                                        _____
                                        MARGARET M. GARNETT
                                        United States District Judge